CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JUL 06 2011

BY: JULIA C. DUDLEY, CLERK
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| GREGORY R. DAVIS, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 6:10cv00018 |
| v. | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States District Judge |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Gregory R. Davis ("Davis") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision to deny his claim for supplemental security income under the Social Security Act (the "Act"). Davis raises two issues on appeal: (1) whether the Administrative Law Judge ("ALJ") erred by not finding the plaintiff's mental impairments severe at step two of the sequential evaluation process, and (2) whether the ALJ erred by not ordering a consultative mental examination. Upon review of the record, it is clear that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's motion for summary judgment (Docket # 14) is **GRANTED**, Davis's motion for summary judgment (Docket # 12) is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached

through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an

impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Davis was born in 1980 and is considered a younger individual under the Act. 20 C.F.R. § 416.963(c). He graduated from high school after attending special education classes since the third or fourth grade. (Administrative Record, hereinafter "R." at 25.) He took Ritalin as a child (R. 147), and completed vocational training in automotive electronics in 2003. (R. 18.) Although he currently lives with his parents (R. 27), Davis lived in a rented trailer with his

---

[1] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 416.929(a).

girlfriend in 2006. (R. 147.) He helps care for his a three or four year-old daughter who lives with her mother. (R. 107.) Prior to the alleged onset date in August, 2006, Davis worked at Dollar General, Wal-Mart, Keys to Mailing, Kroger, and Goodwill, and could not keep the same job for a 90 day period. (R. 207–10.) About a month after the alleged onset date of his disabilities, the vocational program assisting Davis in securing employment terminated his case. (R. 209.) The record indicates that Davis did not attempt to re-open his case. Id.

The record documents Davis's difficultly with depression, anxiety, and Attention Deficit Disorder ("ADD"). From July, 2006, to July, 2009, he received treatment for these conditions at the Blue Ridge Medical Center. (R. 137–38, 140–48, 150–51, 172–75, 195–204, 215–18.) Over the course of his visits with Steven Alderfer, FNP, and Julie Frosch, NP, he received counseling and medication to improve his functioning. Id. His prescriptions were adjusted over the years, and Davis repeatedly stopped taking his medication as prescribed, usually for unknown reasons. Id. When Davis was at low points during his visits, he showed signs of depression, anxiety, and high stress levels, (R. 173), and reported poor organizational skills, self-loathing, difficulty sleeping, and a poor appetite. (R. 174–75, 199.) There is only one instance of Davis claiming he experienced obsessive thinking that "interfere[d] with completing work." (R. 196.) Often, fluctuations in his condition coincided with periods where he had stopped taking medication. (R. 173, 196). However, Davis also had positive follow-ups, where he was "doing good" with his depression, and claimed that his "mood and functioning [were] stable," (R. 195, 215.) At one follow-up visit, Davis did not feel "like he need[ed]" to continue Celexa, his prescription for depression with anxiety. (R. 204.) During their final follow-up contained in the record, Davis claimed to be "more in control," and experienced "no impulsive or agitated behavior." (R. 213.) He also did not feel depressed, and only felt mildly anxious at times. Id.

5

In July, 2008, Frosch noted that he seemed to "earnestly want to improve his productivity and functioning, but seems to feel stuck in a way that is difficult to interpret seeing that he is not severely depressed and his anxiety is stable." (R. 202.) She did note, however, that "neuropsych testing would be very helpful," but that Davis did not have the funds to proceed. Id.

Davis applied for supplemental security income on July 26, 2007. (R. 8.) E. Hugh Tenison, Ph.D., a state agency psychologist, reviewed the record and found that Davis was impaired due to ADD, but not severely. (R. 155–67.) He further determined that insufficient information existed to evaluate the degree of limitation for daily living activities and social functioning, and that Davis had no repeated episodes of decompensation and only mild limitation in maintaining concentration, persistence, or pace. (R. 165.) Davis's application for disability was denied initially by the Commissioner. He then applied for reconsideration, and Richard J. Milan, Ph.D., again reviewed the evidence. (R. 177–90.) Milan found that Davis was impaired due to both ADD and anxiety, but not severely. Id. While Milan did find that sufficient evidence existed to assess the degree of limitation in all three functional criteria, he only found mild limitation in daily living activities, maintaining social functioning, and maintaining concentration, persistence, or pace, and found no decompensation. (R. 187.) Davis's application was again denied upon reconsideration. (R. 8.) A hearing was held before the ALJ on April 22, 2009. Id. The ALJ found that Davis has a non-severe impairment, see 20 C.F.R. § 416.921, and thus ended review at step two of the sequential evaluation process. 20 C.F.R. § 416.920(a)(4)(ii). The Appeals Council denied Davis's request for review, and this action followed. (R. 1–4.)

## III

To qualify as "severe," an impairment or combination of impairments must significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. § 416.920(c). Basic work activities include certain physical functions (e.g. walking, sitting, standing); seeing, hearing, or speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 416.921. Impairments must also last or be expected to last for a continuous period of at least twelve months to qualify as severe. 20 C.F.R. § 416.920(a)(4)(ii); see also 42 U.S.C. § 423(d)(1)(A).

Davis first contends that his medically determinable impairments of ADD, depression, and anxiety, coupled with his difficulty in maintaining employment, provide clear evidence that his mental impairments are severe. (Docket # 13, at 6–7.) While it is undisputed that Davis suffers from mental impairments and has had difficulty maintaining employment, it does not necessarily follow that the former is the cause of the latter. Davis points to evidence in the record from his sessions with Frosch that indicates his desire to improve his functioning so he can maintain gainful employment. (Docket # 13, at 7.) But Frosch, the nurse practitioner who accounts for the bulk of Davis's medical records, found his depression to be non-severe, his anxiety under control, and his ADD stable after adjusting his medication. (R. 202, 213–16.) Despite the fact that Frosch noted neuropsych testing would be helpful to provide better insight into his mental impairments (R. 202), she never referred Davis to a specialist over three years of regular treatment. Beyond medication, Frosch simply counseled Davis on his stress management, self-care, relationships, and worrying, and advised that he stop smoking and begin exercising regularly. (R. 174–75, 202, 217.)

7

Davis testified that he has trouble "staying focused, maintaining concentration, and has extreme difficulty completing tasks and following instructions." (Docket 13, at 1–2.) He also claims to have panic attacks once or twice a month, (Docket 13, at 2), and alleges that his anxiety "about being unable to keep up with his co-workers and the demands of employment cause him to develop diarrhea and he then has to call in sick for work." Id. But while the record indicates that Davis once told Frosch that his obsessive thinking had impeded his ability to complete work, (R. 196), it does not appear that Davis brought any other work-related complaints to Frosch during his three years of regular visits. Indeed, the record suggests there were other reasons for his inability to keep a job. Department of Rehabilitative Services ("DRS") records suggest that laziness and his enabling mother and girlfriend are likely to blame. (R. 207–10.) In particular, the DRS counselor opines that there is "absolutely no reason for [Davis] to keep losing jobs," and that much of the problem "is that he is spoiled and knows he will be taken care of even if he is not working." (R. 209.) For instance, Davis was fired from Goodwill due to theft of property. (R. 208.) Before the incident, records show that his performance was "awful" in that he talked on the phone at work, did not show for work without calling and once left his shift early as soon as the manager left the premises. Id. Following that position, DRS placed him with Old Dominion as a shoe packer, only to see him fired again after he failed to show for work without calling. After Old Dominion, Davis worked as a line packer at Thomasville Furniture, but testified that he elected to leave that position due to "social drama," and "political things." (R. 22.)

Other evidence in the record also supports the ALJ's determinations that Davis's impairment is not severe. For example, Davis admits to being able to care for his own personal needs, prepare meals, shop, drive, leave the house, count change, and attend church. (R. 103.)

Both state agency physicians Tenison and Milan found his impairments to be non-severe, which contradicts Davis's testimony of the intensity, persistence, and limiting effects of his symptoms. (R. 11–12.)

As a claimant, Davis bears the burden of establishing his disability. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). While the record does contain medical evidence of his impairments, it is devoid of objective medical evidence that shows those impairments significantly limit his ability to perform basic work activities. 42 U.S.C. § 423(d)(1). A diagnosis alone is insufficient to establish disability. Gross v. Heckler, 785 F.2d 1163, 11665–66 (4th Cir. 1986). Furthermore, the ALJ is not required to accept Davis's statements regarding the effect his mental impairments have on his ability to perform basic work activities. These subjective symptoms—his alleged monthly panic attacks, difficulty maintaining focus, difficulty completing tasks and following instructions, anxiety induced diarrhea—must be supported by an objective medical record. See Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996) (finding that allegations of pain or other subjective symptoms alone do not establish disability, and cannot take precedence over objective medical evidence or lack thereof) (citing Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir.1986)). No such record exists here.

The ALJ must therefore make credibility determinations of Davis's subjective symptoms in light of the entire record. Given the inconsistent reasons why Davis could not keep a job, and the differing accounts of the severity and extent of his mental impairments, the ALJ found the claimant's statements to lack credibility. (R. 12.) Such determinations are solely in the province of the ALJ, and the court should not interfere with those determinations. Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989). Accordingly, substantial evidence exists in the record to support the ALJ's finding.

**IV**

Davis also argues that the ALJ erred by not ordering a consultative examination of Davis's mental impairments and their impact on his ability to engage in substantial gainful employment. (Docket # 13, at 7.) Specifically, he suggests that the ALJ's citing of Davis's "relatively limited" treatment (R. 12, ¶ 2) as an indication of only mild impairment shows that the record contained insufficient medical evidence. Id. Davis contends that by denying him a consultative examination, the ALJ failed in his duty to fully develop the record. (Docket # 13, at 8.) While insufficient medical evidence is one of the limited reasons an ALJ can consider for ordering a consultative exam, 20 C.F.R. § 416.919(a), the insufficiency of medical evidence in this context refers to the determination of "whether [the claimant] is disabled," and not whether the claimant carried his burden of proof in establishing his disability. 20 C.F.R. § 416.917; see Loeffelholz v. Astrue, No. C09-1043, 2010 WL 4823665, at *3 (N.D. Iowa Nov. 22, 2010) ("[A]n ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence *to determine whether the claimant is disabled*.") (emphasis added) (citing Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir.1994) (citations omitted)); see also Woods v. Shalala, No. 93-5180, 1994 WL 161334, at *1 (10th Cir. May 2, 1994) ("The Secretary may order a consultative examination when the record contains insufficient medical evidence *to make a disability determination*.") (emphasis added).

Davis may not have provided medical evidence favorable to a finding of severe impairment, (R. 12), but the state psychological reports from Dr. Tenison and Dr. Milan, coupled with Frosch's treatment notes, do provide sufficient medical evidence to make a disability determination. (R. 155–67, 177–90.) Because sufficient objective medical evidence of the

severity of his mental impairments exists in the record, Davis's claim that the ALJ failed to fully develop the record fails.

V.

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence and, in this case, it is. In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of mental impairment. The objective medical record simply fails to document the existence of a severe impairment that would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Accordingly, the decision of the Commissioner is **AFFIRMED**, the plaintiff's motion for summary judgment is **DENIED**, and defendant's motion for summary judgment is **GRANTED**.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered: July 6, 2011

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge